# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | DATE FILED: _____ |
| v. | : | CRIMINAL NO. 05-576 |
| PRINCE ISAAC, | : | VIOLATIONS: 21 U.S.C. § 846 |
| a/k/a "Boo," | | (conspiracy to distribute 50 grams |
| a/k/a "Connect," | : | or more of cocaine base ("crack") |
| a/k/a "Connetti," | | and heroin - 1 count) |
| SHAMEK HYNSON, | : | 21 U.S.C. § 848 (engaging in continuing |
| a/k/a "Shy," | | criminal enterprise - 1 count) |
| a/k/a "Legend," | : | 21 U.S.C. § 841(a)(1) (distribution of |
| STEVEN GONZALEZ, | | cocaine base ("crack") or heroin - |
| a/k/a "Boobie," | : | 9 counts) |
| DWIGHT WILLIAMS, | | 21 U.S.C. § 860(a) (distribution of cocaine |
| a/k/a "Pops" | : | base ("crack") within 1000 feet of a |
| | | playground - 1 count) |
| | : | 21 U.S.C. § 860(c)(1) (employment of a |
| | | minor to distribute controlled substances |
| | : | near a playground - 1 count) |
| | | 21 U.S.C. § 861 (employment of a minor to |
| | : | distribute controlled substances - 1 count) |
| | | 21 U.S.C. § 856 (maintaining a drug |
| | : | facility - 1 count) |
| | | 18 U.S.C. § 924(c) (using and carrying of |
| | : | a firearm during commission of a drug |
| | | trafficking crime - 2 counts) |
| | : | 18 U.S.C. § 1512(b)(1),(b)(2)(tampering |
| | | with a witness - 15 counts) |
| | : | 18 U.S.C. § 922(g)(1)(convicted felon in |
| | | possession of a firearm - 1 count) |
| | : | 18 U.S.C. § 2 (aiding & abetting) |
| | | Notice of forfeiture |

## SECOND SUPERSEDING INDICTMENT

<u>COUNT ONE</u>

**THE GRAND JURY CHARGES THAT:**

<u>INTRODUCTION</u>

1.      Defendant PRINCE ISAAC, a/k/a "Boo," a/k/a "Connect," a/k/a "Connetti,"and defendant SHAMEK HYNSON, a/k/a "Shy," were partners in a violent drug distribution gang that operated in the city of Lancaster, in the Eastern District of Pennsylvania. The gang purchased  illegal controlled substances, including cocaine base ("crack cocaine") and heroin, from suppliers in New York City, and obtained firearms from North Carolina and South Carolina, which were transported to Lancaster and New York.

2.      The gang purchased wholesale quantities of crack cocaine and heroin from suppliers, which were repackaged for resale in Lancaster to the gang's wholesale and retail customers.

3.      Defendants PRINCE ISAAC and SHAMEK HYNSON and other members of the gang regularly carried and used loaded firearms, which had been illegally purchased for them, to threaten or assault others to: (1) collect outstanding drugs debts; (2) deter and eliminate competition from rival drug dealers in Lancaster; and (3) retaliate for "rip-offs" or robberies of drugs and drug proceeds by gang members and rival drug gangs.

<u>THE CONSPIRACY</u>

4.      From at least in or about May 2004, through in or about April 2005, in Lancaster, in the Eastern District of Pennsylvania, and elsewhere, defendants

2

>           **PRINCE ISAAC,**
>                     **a/k/a "Boo,"**
>                     **a/k/a "Connect,"**
>                     **a/k/a "Connetti,"**
>           **SHAMEK HYNSON,**
>                     **a/k/a  "Shy,"**
>                     **a/k/a  "Legend,"**
>           **STEVEN GONZALEZ,**
>                     **a/k/a "Boobie," and**
>           **DWIGHT WILLIAMS,"**
>                     **a/k/a "Pops"**

conspired and agreed, together and with others known and unknown to the grand jury, to

knowingly and intentionally distribute 50 grams or more, that is, in excess of 200 grams, of a

mixture and substance containing a detectable amount of cocaine base ("crack cocaine"),  a

Schedule II controlled substance, and a mixture and substance containing a detectable amount of

heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section

841(a)(1).

**MANNER AND MEANS**

It was part of the conspiracy that:

5.      The gang was organized, controlled, supervised, financed and operated by

defendants PRINCE ISAAC and his half-brother, defendant SHAMEK HYNSON.

6.      The gang sold and otherwise distributed more than 200 grams of crack

cocaine and additional quantities of heroin for cash and received gross revenues that exceeded

$10,000 per day.  The gang sold crack cocaine in wholesale and retail quantities ranging from

less than a gram, up to and including multi-gram quantities.  The heroin was also sold in

quantities ranging from single packets, up to and including bundles containing 10 packets each.

7.      The gang stored, manufactured, prepared and distributed crack cocaine and heroin from in or near buildings and a storage facility owned and/or controlled by defendants PRINCE ISAAC, SHAMEK HYNSON, STEVEN GONZALEZ, a/k/a "Boobie," DWIGHT WILLIAMS, a/k/a "Pops," and person #1 known to the grand jury.  These buildings included at various times the following locations in the city of Lancaster:

(1)      559 W. Orange Street, 1st floor apartment;

(2)      25 W. Filbert Street, 2nd floor apartment;

(3)      831 Fremont Street, apartment #5; and

(4)      32 Garden Court, apartment #1.

8.      Members of the gang routinely communicated with each other via cell phones.

9.      The gang employed various managers and workers, who were paid in cash or received commissions in cash from the sale of crack cocaine and heroin and performed some or all of the following responsibilities:

a.  Enforcers carried and used firearms to protect drug sales locations from encroachment by other drug traffickers and collected money for drug sales, by force if necessary.

b.  Packagers broke down multi-gram quantities of crack cocaine into smaller quantities and placed them in plastic packets for resale by gang workers.

c.  Street level sellers sold crack cocaine and heroin at various street corner locations and inside "crackhouse" locations in Lancaster controlled by the gang.

10.      Defendants PRINCE ISAAC and SHAMEK HYNSON, and person #2 known to the grand jury obtained firearms illegally from straw purchasers, obliterated the

4

serial numbers on some of the firearms, and carried and used some of the firearms: (a) to protect their crack cocaine and heroin operation and the cash proceeds earned from the sale of the crack cocaine and heroin; and (b) to prevent the theft by other members of the gang.

### MEMBERS OF THE GANG

11.     Defendant PRINCE ISAAC founded, organized, controlled, supervised, managed, financed and operated the gang.  Defendant ISAAC and others known and unknown to the grand jury purchased multi-gram quantities of crack cocaine and heroin from suppliers in New York City for cash, which defendant ISAAC and other gang members transported to the City of Lancaster, where it was repackaged and sold by defendant ISAAC and other gang workers.  Defendant ISAAC gave crack cocaine and heroin directly to defendants SHAMEK HYNSON, STEVEN GONZALEZ, and DWIGHT WILLIAMS, as well as to persons #1 through 8 known to the grand jury, and others unknown to the grand jury, for resale to gang customers.

12.     Defendant SHAMEK HYNSON partnered with defendant PRINCE ISAAC in the daily operation of the gang and the distribution of crack cocaine and heroin in the city of Lancaster.  Defendant HYNSON gave crack cocaine and heroin directly to gang members and to other persons known and unknown to the grand jury for resale to customers of the gang. Defendant HYNSON also enlisted and paid "straw purchasers" to buy guns for him illegally for his use and the use of gang members in the operation of the gang and for resale.

13.     Defendant STEVEN GONZALEZ worked directly for defendant PRINCE ISAAC, stored supplies of crack cocaine and heroin, and supplied and resupplied gang workers with crack cocaine and heroin to sell to gang customers.  At the direction of defendant PRINCE ISAAC, defendant GONZALEZ sold crack cocaine and heroin directly to persons known and

unknown to the to the grand jury.  Defendant GONZALEZ also solicited Person #5 known to the grand jury in an effort to get Person #5 to start selling crack cocaine for him.

14. Defendant DWIGHT WILLIAMS agreed to allow the gang to break down, package and sell crack cocaine and heroin at his residence located at 25 W. Filbert Street, 2nd floor apartment, in Lancaster, which was located within 1000 feet of Crystal Park, a public park facility which had playground equipment for children.  In return for the use of his residence, defendant WILLIAMS was paid by gang members with quantities of crack cocaine, which he used himself and shared with other persons unknown to the grand jury.

15. The gang also included numerous other individuals known and unknown to the grand jury including a juvenile, who participated in packaging, delivering, and selling crack cocaine and heroin, as well as straw purchasing firearms.

## OVERT  ACTS

In furtherance of the conspiracy, and to accomplish its objects, the following overt acts, among others, were performed by the defendants in the city of  Lancaster in the Eastern District of Pennsylvania and elsewhere:

1. Between in or about April 2004, and on or about October 19, 2004, defendants PRINCE ISAAC and SHAMEK HYNSON distributed small quantities of cocaine base ("crack") to persons #6 and #7 known to the grand jury, in exchange for borrowing their car to use in conducting drug operations for the gang.

2. Between in or about June 2004, and in or about December 2004, at the direction of defendants PRINCE ISAAC and SHAMEK HYNSON, Person #4 sold an "eightball" (1/8th ounce) of crack cocaine in Lancaster, Pennsylvania to a gang customer.

6

3.       Between in or about June 2004, and in or about December 2004, at the direction of defendants PRINCE ISAAC and SHAMEK HYNSON, Person #4 sold one bundle containing 10 packets of heroin in Lancaster, Pennsylvania to a gang customer.

4.       Between in or about July 2004, and on or about October 19, 2004, defendant PRINCE ISAAC and person #1 known to the grand jury drove to New York, where defendant ISAAC obtained crack cocaine from a supplier, and drove back to Lancaster with the crack cocaine.

5.       In or about August 2004, inside 32 Garden Court, apartment #1, in Lancaster, defendant PRINCE ISAAC assisted by person #1 broke down and repackaged crack cocaine into $50 quantities for resale to gang customers in Lancaster.

6.       In or about August 2004, inside 32 Garden Court, apartment #1, in Lancaster, defendant PRINCE ISAAC gave person #1 approximately 7 grams of crack cocaine, which Person #1 broke down and repackaged into $1,000 quantities  for resale to gang customers in Lancaster.

7.       Between in or about July 1, 2004, and on or about October 19, 2004, defendant PRINCE ISAAC bagged up crack cocaine for resale inside the residence of defendant DWIGHT WILLIAMS, located at 25 W. Filbert Street in Lancaster.

8.       Between in or about July 1, 2004, and on or about October 19, 2004, defendant PRINCE ISAAC sold at least 4 bundles of heroin to customers in Lancaster.

9.       Between in or about August 2004, and in or about September 2004, after defendant PRINCE ISAAC gave person # 1 approximately 28 grams of crack cocaine for resale, at the direction of defendant ISAAC, person #1 sold approximately 20 grams of crack cocaine  to

a gang customer in exchange for $500.

10.     Between July 1, 2004, and October 18, 2004, at the direction of defendant PRINCE ISAAC, Person #5 and Person #2 repackaged and sold $1,000 worth of crack cocaine, known as "G-Packs," to customers of the gang.

11.     Between in or about July 1, 2004, and October 22, 2004, at the direction of defendant PRINCE ISAAC, person #2, a juvenile, sold crack cocaine inside the Shamrock Bar in Lancaster.

12.     Between in or about July 1, 2004, and October 22, 2004, at the direction of defendant PRINCE ISAAC, person #2, a juvenile, sold crack cocaine inside the Manor Tavern in Lancaster.

13.     Between in or about July 1, 2004, and October 22, 2004, at the direction of defendant PRINCE ISAAC, person #2, a juvenile, sold crack cocaine inside the residence of defendant DWIGHT WILLIAMS located at 25 W. Filbert Street in Lancaster.

14.     In or about summer 2004, defendant PRINCE ISAAC recruited Person #5 to distribute drugs for the gang in Lancaster by giving Person #5 a "G-Pack" ($1000 worth of crack cocaine) to sell.

15.     Between on or about October 19, 2004, and on or about December 1, 2004, defendant STEVEN GONZALEZ offered person #5 1/16th of an ounce of crack cocaine, and the promise of greater amounts of crack cocaine ("weight") in the future.

16.     On or about October 24, 2004, at the direction of defendant PRINCE ISAAC:

8

a.  Defendant STEPHEN GONZALEZ gave approximately 10 grams of crack cocaine to person #3 at 559 W. Orange Street, 1st floor apartment, in Lancaster.

b.  After person #3 broke down and repackaged the crack cocaine for resale, defendant GONZALEZ drove person #3 to the residence of defendant DWIGHT WILLIAMS to sell the crack cocaine.

c.  Person #3 gave less than 1 gram (3 pieces) of crack cocaine to defendant WILLIAMS as payment, so that defendant WILLIAMS would permit Person #3 to sell crack cocaine inside his residence.

d.  At the direction of defendant PRINCE ISAAC, person #3 sold crack cocaine to between 10 and 15 customers inside the residence of defendant WILLIAMS.

17.    On or about October 26, 2004:

a.  Defendant PRINCE ISAAC drove person #3 to the corner of Queen and Andrew Streets in Lancaster, gave person #3 a bundle of heroin to sell, and instructed person #3 to sell the heroin there.

b.   Person #3 sold packets of heroin to approximately three customers on or around the corner of Queen and Andrew Streets in Lancaster.

18.    On or about October 27, 2004:

a.  At the direction of defendant PRINCE ISAAC, person #3 sold $300 worth of crack cocaine to customers at the residence of defendant DWIGHT WILLIAMS.

b.  Person #3 sold crack cocaine to approximately 3 or 4 customers at a "crackhouse" located on Nevin Street in Lancaster.

c.   When person # 3 ran out of his supply of crack cocaine, he went to the residence of defendant STEPHEN GONZALEZ at 559 W. Orange Street in Lancaster, where defendant GONZALEZ resupplied person # 3 with approximately 10 grams of crack cocaine.

d.  Person #3 then broke down and repackaged the approximately 10 grams of crack cocaine inside defendant GONZALEZ's residence.

e.  Person #3 gave less than 2 grams (5 pieces) of crack cocaine to defendant DWIGHT WILLIAMS as payment, so that defendant WILLIAMS would continue to permit person #3 to sell crack cocaine base inside defendant WILLIAMS residence at 25 W. Filbert Street in Lancaster.

f.  At the direction of defendant PRINCE ISAAC, person #3 sold approximately $200 worth of crack cocaine to customers at the residence of defendant WILLIAMS.

19.   On or about November 1, 2004, defendant PRINCE ISAAC gave person #3 five bundles of heroin to sell.

## THE QUEEN STREET SHOOTING

On or about October 18, 2004:

20.   Defendant PRINCE ISAAC and person #2 confronted person #5 at the residence of defendant DWIGHT WILLIAMS, located at 25 W. Filbert Street in Lancaster, about person #5's failure to repay defendant ISAAC $100 for the crack cocaine that defendant ISAAC had given person #5.

21.   Because he was not satisfied with person # 5's explanation for failing to repay $100, defendant ISAAC called a person unknown to the grand jury and told the person to

10

"take care of" person #5.

22.     After Person #5 fled the residence of defendant DWIGHT WILLIAMS for fear of getting shot, defendant SHAMEK HYNSON directed person #4 to drive defendant HYNSON and person #2 to Queen Street in Lancaster to locate and shoot person #5.

23.     When defendant SHAMEK HYNSON and person #2 arrived at Queen Street, at the direction of defendant PRINCE ISAAC and defendant HYNSON, person #2 got out of the car and shot person #5 in the stomach causing serious injuries.

24.     On or about October 22, 2004, after person #2 was arrested and charged with the shooting of person #5, defendant SHAMEK HYNSON telephoned person #13 known to the grand jury and directed person #13 to go to the police station and pretend to be a family member of person #2 .  When person #13 known to the grand jury initially did not agree to do as defendant HYNSON ordered, defendant SHAMEK HYNSON became very angry and threatened person #13 stating "You're not going to have no car, no life, or no house."

## THE HOWARD AND PERSHING STREET SHOOTING

On or about October 18, 2004:

25.     Defendant SHAMEK HYNSON confronted person #14 at the intersection of Howard and Pershing Streets in Lancaster, and demanded that person #14 repay a drug debt purportedly owed to defendant HYNSON by person #9 known to the grand jury.

26.     When person #14 refused to pay, defendant SHAMEK HYNSON pulled out a handgun and fired multiple shots at person # 14 causing him serious injuries.

All in violation of Title 21, United States Code, Section 846.

11

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     The allegations in paragraphs 1 through 3 and 5 through 15 of Count One of this superseding indictment are realleged here.

2.     From at least in or about May 2004, through on or about April 2005, in Lancaster, in the Eastern District of Pennsylvania, and elsewhere, defendant

**PRINCE ISAAC,**
**a/k/a "Boo,"**
**a/k/a "Connect,"**
**a/k/a "Connetti,"**

engaged in a continuing criminal enterprise in that:

a.     defendant violated one or more provisions of subchapter I of Chapter 13 of Title 21, United States Code, which are felonies, and such violations were a part of a continuing series of violations of subchapter I of Chapter 13 of Title 21, United States Code, including but not limited to, 1 through 17 of this indictment;

b.     the series of violations described in paragraph (a) were undertaken in concert with five or more persons, known and unknown to the grand jury, with respect to whom defendant occupied a position of organizer, a supervisory position and a position of management; and

c.     defendant obtained substantial income and resources from the violations described in paragraphs (a) and (b) above.

In violation of Title 21, United States Code, Section 848.

12

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

Between in or about May 2004, in Lancaster, in the Eastern District of

Pennsylvania, defendants

**PRINCE ISAAC,**
**a/k/a "Boo,"**
**a/k/a "Connect,"**
**a/k/a "Connetti," and**
**SHAMEK HYNSON,**
**a/k/a  "Shy,"**
**a/k/a  "Legend,"**

knowingly and intentionally distributed a mixture and substance containing a detectable amount

of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

13

## <u>COUNT FOUR</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about August 2004, in Lancaster, in the Eastern District of Pennsylvania, defendant

**PRINCE ISAAC,**
**a/k/a "Boo,"**
**a/k/a "Connect,"**
**a/k/a "Connetti,"**

knowingly and intentionally distributed 5 grams or more, that is, approximately 7 grams, of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B).

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about August 2004, in Lancaster, in the Eastern District of Pennsylvania, defendant

**PRINCE ISAAC,**
**a/k/a "Boo,"**
**a/k/a "Connect,"**
**a/k/a "Connetti,"**

knowingly and intentionally distributed 5 grams or more, that is, approximately 28 grams, of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B).

15

## COUNT SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

Between in or about July 2004, and on or about October 18, 2004, in Lancaster, in the Eastern District of Pennsylvania, defendant

**PRINCE ISAAC,**
**a/k/a "Boo,"**
**a/k/a "Connect,"**
**a/k/a "Connetti,"**

knowingly and intentionally distributed a mixture and substance containing a detectable amount of heroin, a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

16

<u>**COUNT SEVEN**</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

Between in or about July 2004, and on or about October 18, 2004, in Lancaster, in the Eastern District of Pennsylvania, defendant

**PRINCE ISAAC,**
**a/k/a "Boo,"**
**a/k/a "Connect,"**
**a/k/a "Connetti,"**

knowingly and intentionally distributed 5 grams or more, that is, approximately 28 grams, of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B).

## COUNT EIGHT

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 24, 2004, in Lancaster, in the Eastern District of

Pennsylvania, defendants

**PRINCE ISAAC,**
**a/k/a "Boo,"**
**a/k/a "Connect,"**
**a/k/a "Connetti," and**
**STEVEN GONZALEZ,**
**a/k/a "Boobie,"**

knowingly and intentionally distribute 5 grams or more, that is, approximately 10 grams, of

a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B).

## COUNT NINE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 26, 2004, in Lancaster, in the Eastern District of

Pennsylvania, defendant

**PRINCE ISAAC,**
**a/k/a "Boo,"**
**a/k/a "Connect,"**
**a/k/a "Connetti,"**

knowingly and intentionally distributed a mixture and substance containing a detectable amount

of heroin, a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

<u>**COUNT TEN**</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 27, 2004, in Lancaster, in the Eastern District of Pennsylvania,

defendants

**PRINCE ISAAC,**
**a/k/a "Boo,"**
**a/k/a "Connect,"**
**a/k/a "Connetti," and**
**STEVEN GONZALEZ,**
**a/k/a "Boobie,"**

knowingly and intentionally distributed 5 grams or more, that is, approximately 10 grams, of

a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B).

## COUNT ELEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about November 1, 2004, in Lancaster, in the Eastern District of Pennsylvania,

defendant

> **PRINCE ISAAC,**
> **a/k/a "Boo,"**
> **a/k/a "Connect,"**
> **a/k/a "Connetti," and**
> **STEVEN GONZALEZ,**
> **a/k/a "Boobie,"**

knowingly and intentionally distributed a mixture and substance containing a detectable amount

of heroin, a Schedule I controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

## COUNT TWELVE

**THE GRAND JURY FURTHER CHARGES THAT:**

      Between in or about July 2004, and on or about October 18, 2004, in Lancaster, in the Eastern District of Pennsylvania, defendant

**PRINCE ISAAC,**
**a/k/a "Boo,"**
**a/k/a "Connect,"**
**a/k/a "Connetti,"**

a person at least eighteen years of age, knowingly and intentionally employed, hired, used, persuaded, induced, enticed and coerced a person under eighteen years of age, that is, person #2 known to the grand jury, to distribute a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

      In violation of Title 21, United States Code, Section 861.

22

## COUNT THIRTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

Between in or about July 2004, and on or about October 18, 2004, in Lancaster, in the Eastern District of Pennsylvania, defendant

**PRINCE ISAAC,**
**a/k/a "Boo,"**
**a/k/a "Connect,"**
**a/k/a "Connetti,"**

a person at least twenty-one years of age, knowingly and intentionally employed, hired, used, persuaded, induced, enticed and coerced a person under eighteen years of age, that is, person #2 known to the grand jury, to distribute a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1000 feet of Crystal Park, a public park located in the 500 block of First Street in Lancaster, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1).

In violation of Title 21, United States Code, Section 860(c)(1).

## COUNT FOURTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

      Between in or about July 2004, and on or about October 18, 2004, in Lancaster, in the Eastern District of Pennsylvania, defendant

**PRINCE ISAAC,**
**a/k/a "Boo,"**
**a/k/a "Connect,"**
**a/k/a "Connetti," and**
**STEVEN GONZALEZ,**
**a/k/a "Boobie,"**

and Person #3 known to the grand jury, distributed and aided and abetted and willfully caused the distribution of, a  mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1000 feet of Crystal Park, a public park located in the 500 block of First Street in Lancaster, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1).

      In violation of Title 21, United States Code, Section 860(a).

## COUNT FIFTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

    Between in or about July 2004, and on or about December 1, 2004,  in Lancaster, in the Eastern District of Pennsylvania, defendant

**DWIGHT WILLIAMS,**
**a/k/a "Pops,"**

managed and controlled an apartment, that is, apartment #2, located at 25 W. Filbert Street in Lancaster, Pennsylvania, as a lessee and occupant, and knowingly and intentionally rented, leased and made available for use, this apartment, with and without compensation, for the purpose of unlawfully manufacturing, storing, distributing and using controlled substances, that is, cocaine base ("crack"), a Schedule II controlled substance, and heroin, a Schedule I controlled substance.

    In violation of Title 21, United States Code, Section 856(a)(2).

25

## COUNT SIXTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 18, 2004, near Queen Street, in Lancaster, in the Eastern District of Pennsylvania, defendants

**PRINCE ISAAC,**
**a/k/a "Boo,"**
**a/k/a "Connect,"**
**a/k/a "Connetti," and**
**SHAMEK HYNSON,**
**a/k/a  "Shy,"**
**a/k/a  "Legend,"**

knowingly used and carried, and aided and abetted the use and carrying of, a firearm, during and in relation to a drug trafficking offense for which they may be prosecuted in a Court of the United States, that is, conspiracy to distribute cocaine base ("crack") and heroin, in violation of Title 21, United States Code, Section 846, as charged in this superseding indictment.

In violation of Title 18, United States Code, Sections 924(c)(1) and 2.

## COUNT SEVENTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 18, 2004, at Howard and Pershing Streets, in Lancaster, in the Eastern District of Pennsylvania, defendants

**PRINCE ISAAC,**
**a/k/a "Boo,"**
**a/k/a "Connect,"**
**a/k/a "Connetti," and**
**SHAMEK HYNSON,**
**a/k/a "Shy,"**
**a/k/a "Legend,"**

knowingly used and carried, and aided and abetted the use and carrying of, a firearm, during and in relation to a drug trafficking offense for which they may be prosecuted in a Court of the United States, that is, conspiracy to distribute cocaine base ("crack") and heroin, in violation of Title 21, United States Code, Section 846, as charged in this superseding indictment.

In violation of Title 18, United States Code, Sections 924(c)(1) and 2.

## COUNTS EIGHTEEN THROUGH TWENTY-ONE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      On or about September 29, 2005, defendants PRINCE ISAAC and

SHAMEK HYNSON were charged in a seventeen-count indictment as follows: with conspiracy

to distribute 50 grams or more of cocaine base ("crack"), in violation of 21 U.S.C. § 846,

distribution of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1); distribution of

cocaine base ("crack") within 1,000 feet of a playground, in violation of 21 U.S.C. § 860(a);

employment of a minor to distribute controlled substances near a playground, in violation of 21

U.S.C. § 860(c)(1); employment of a minor to distribute controlled substances, in violation of 21

U.S.C. § 861; using and carrying a firearm during the commission of a drug trafficking crime, in

violation of 18 U.S.C. § 924(c); and aiding and abetting, in violation of 18 U.S.C. § 2.  This case

is pending as <u>United States v. Prince Isaac</u>, Criminal No. 05-576, in the United States District

Court for the Eastern District of Pennsylvania.

      2.      On or about February 22, 2007, defendants PRINCE ISAAC and

SHAMEK HYNSON were charged in a twenty-one-count superseding indictment as follows:

with conspiracy to distribute 50 grams or more of cocaine base ("crack"), in violation of 21

U.S.C. § 846, distribution of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1);

distribution of cocaine base ("crack") within 1,000 feet of a playground, in violation of 21 U.S.C.

§ 860(a); employment of a minor to distribute controlled substances near a playground, in

violation of 21 U.S.C. § 860(c)(1); employment of a minor to distribute controlled substances, in

violation of 21 U.S.C. § 861; using and carrying a firearm during the commission of a drug

trafficking crime, in violation of 18 U.S.C. § 924(c); and aiding and abetting, in violation of 18

U.S.C. § 2.  This case is pending as <u>United States v. Prince Isaac</u>, Criminal No. 05-576, in the

United States District Court for the Eastern District of Pennsylvania.

3.     Defendants PRINCE ISAAC and SHAMEK HYNSON sought to illegally

influence the testimony of a potential witness, that is, a person known as S.G., through a series of

acts that were designed to intimidate, threaten, and corruptly persuade S.G. not to cooperate with

law enforcement and not to testify as a government witness at their trial in the United States

District Court for the Eastern District of Pennsylvania.

4.     On or about December 19, 2005, defendant PRINCE ISAAC sent a letter

to Person #1, a person known to the grand jury.  Contained inside the letter to Person #1 was a

second letter addressed to S.G., which defendant PRINCE ISAAC told Person #1 to mail to S.G.,

which Person #1 did.

5.     On or about January 15, 2006, defendant PRINCE ISAAC sent a letter

to Person #1.  Contained inside the letter to Person #1 was a second letter addressed to S.G.,

which defendant PRINCE ISAAC told Person #1 to mail to S.G.  In this letter to S.G., defendant

PRINCE ISAAC  threatened S.G. not to "do what I would not," and promised S.G. that he would

be held accountable for his actions and "punished by the forces of nature."  Defendant PRINCE

ISAAC further advised S.G., "Just know God will give you refuge long as you seek him & don't

place blame on anyone."  Defendant PRINCE ISAAC then threatened S.G. again, stating, "...&

think thoroughly before a unwise choice, that will lead to much turmoil.  Understand!?!"  Finally,

defendant PRINCE ISAAC asked S.G. whether he needed any money on his books.  Person #1

did not forward this letter to S.G.

6.     On or about February 2, 2006, defendant PRINCE ISAAC sent a letter

to S.G. threatening "severe consequences for you [S.G.] and the people you cherish," if S.G. continued to cooperate with the government.

       7.     Subsequent to the threat described in paragraph 3, above, in or about February 2006, S.G. explained to defendant SHAMEK HYNSON that defendant PRINCE ISAAC had threatened him.  Then, defendant HYNSON told S.G. about an inmate, who after the inmate had cooperated and testified against another defendant, was killed, which S.G. understood to be a threat by defendant HYNSON to murder S.G.

       8.     In or about October, 2006, defendant PRINCE ISAAC told S.G. that if he continued to cooperate with the government, his family would suffer the consequences.

       9.     On or about the dates set forth in the chart below, in Philadelphia, in the Eastern District of Pennsylvania and elsewhere, the defendant listed in the chart below, knowingly used intimidation and threats, and corruptly persuaded, and attempted to do so, with intent to influence, delay and prevent the testimony of "S.G." at an official proceeding, that is, the pending trial of defendants PRINCE ISAAC and SHAMEK HYNSON in United States v. Prince Isaac, et al. Criminal No. 05-576, in the United States District Court for the Eastern District of Pennsylvania.

| Count | On or About the Following Dates | Defendant | Communicated |
|---|---|---|---|
| 18 | January 15, 2006 | **PRINCE ISAAC** | By letter |
| 19 | February 2, 2006 | **PRINCE ISAAC** | By letter |
| 20 | February 2006 | **SHAMEK HYNSON** | Verbally |
| 21 | October 2006 | **PRINCE ISAAC** | Verbally |

In violation of Title 18, United States Code, Section 1512(b)(1), (b)(2).

30

## COUNTS TWENTY-TWO THROUGH TWENTY-FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Defendant PRINCE ISAAC sought to illegally influence the testimony of a potential witness, that is, Person #1, through a series of acts that were designed to intimidate, threaten, and corruptly persuade Person #1 not to cooperate with law enforcement and not to testify as a government witness at his trial in the United States District Court for the Eastern District of Pennsylvania.

2.      From in or about October, 2005 to in or about November, 2005, defendant PRINCE ISAAC instructed Person #1 during telephone conversations and in letters he sent to Person #1, that Person #1 should "take the Fifth" (assert Person #1's Fifth Amendment privilege) if called to testify against him at his trial.

3.      On or about October 12, 2005, defendant PRINCE ISAAC sent a letter to Person #1, instructing Person #1 that all Person #1 needed to do when approached by the government to give a statement and testify was to say "I plead the Fifth (Amendment)." Defendant PRINCE ISAAC further stated, "Instead you done the unthinkable."  In that same letter, defendant PRINCE ISAAC warned Person #1 that "It will come back up & I will tell you how to go about it no more making the same mistakes."

4.      On or about December 12, 2005, defendant PRINCE ISAAC sent a letter to Person #1, telling Person #1, "You have caused many men problems."  Defendant PRINCE ISAAC then referenced musical artist Lil'Kim, and her conviction on a perjury charge, and pointed out that "her dignity, principles & street orientation made her not break the code of silence whether getting a felony or not, her principles superseded."  Defendant PRINCE ISAAC

31

then stated "You.....is the sole person who got good men put away.  (Men) that was on there (sic)

way out the system until 6-9-05 you get picked up on a (expletives deleted) charge."  Defendant

PRINCE ISAAC then informed Person #1 that "...every person you picked out, every person you

said something about, as your information, provided by your friends the (police); it don't matter

if you move to South America or to the core they possess one thing that will locate you anywhere

& it aint your name.  If I die in this cell right now, all those other (men) aint, they be out shortly

everyday and night they wake up in a cell they gonna remember who put them there; what you

fail to realize is that all the (things) you think you know or heard or the people you think you

know was a surface to something with much more depth; (men) have people who love them &

despise their people is lock down; these (men) could have all the respect for me in the world &

will respect my wishes but you have played with their livelihood.   Finally, defendant PRINCE

ISAAC informed Person #1, "...you have made many enemies."

     5.     On or about December 19, 2005, defendant PRINCE ISAAC sent a letter

to Person #1, asking Person #1 to marry him, in an effort to prevent the government from calling

Person #1 as a witness against him at trial.

     6.     On or about February 25, 2006, defendant PRINCE ISAAC sent a letter

to Person #1, and stated "As you know you are their key; Now I already explained to you about

the Fifth but I feel that I can't depend on you to do that; not say nothing to them; when you get on

the .....just say I take the Fifth.  What I need you to do in letter form is write Moms and explain

how they came to your job & made you go with them & told you what to say."  Finally,

defendant PRINCE ISAAC instructed Person #1 "I just need you to be truthful & to write how

when they locked you up in June they coerced you to fabricate statements."

7.      On or about the dates set forth in the chart below, in Philadelphia and Lancaster, in the Eastern District of Pennsylvania and elsewhere, defendant

**PRINCE ISAAC**

knowingly used intimidation and threats, and corruptly persuaded, and attempted to do so, with intent to influence, delay and prevent the testimony of Person #1 at an official proceeding, that is, the pending trial of defendants PRINCE ISAAC and SHAMEK HYNSON in United States v. Prince Isaac, et al. Criminal No. 05-576, in the United States District Court for the Eastern District of Pennsylvania.

| Count | On or about the following dates | Defendant | Communicated |
|-------|--------------------------------|-----------|--------------|
| 22 | October-November 2005 | **PRINCE ISAAC** | By letter and telephone |
| 23 | October 12, 2005 | **PRINCE ISAAC** | By letter |
| 24 | December 12, 2005 | **PRINCE ISAAC** | By letter |
| 25 | December 19, 2005 | **PRINCE ISAAC** | By letter |
| 26 | February 25, 2006 | **PRINCE ISAAC** | By letter |

In violation of Title 18, United States Code, Section 1512(b)(1), (b)(2).

33

## COUNT TWENTY-SEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

        1.      Defendant PRINCE ISAAC sought to illegally influence the testimony of a potential witness, that is, a person known as D.W., through a series of acts that were designed to intimidate, threaten, and corruptly persuade D.W. not to cooperate with law enforcement and not to testify as a government witness at his trial in the United States District Court for the Eastern District of Pennsylvania.

        2.      On or about December 25, 2005, defendant PRINCE ISAAC sent a letter to Person #1.  Contained inside the letter to Person #1 was a second letter addressed to D.W., which defendant PRINCE ISAAC told Person #1 to mail to D.W.  In this letter to D.W., defendant PRINCE ISAAC repeatedly stated that the government has no case against D.W., and that, "like I told you before, they cant prove you know any of those people, not your codefendants or those who went to the grand jury.  You cant allow them to make you think otherwise, they will do all they could to make you think they have a case, don't fall for it.  They wont be able to prove you maintained a drug facility or conspired with anyone, they aiming for your codees, in the process they will make you a puppet."  Defendant PRINCE ISAAC further instructed D.W., "Just be firm & repel from their tricknology, because they will bring it.  Person #1 known to the grand jury did not forward this letter to D.W.

        3.      On or about December 25, 2005, in Philadelphia and Lancaster, in the Eastern District of Pennsylvania and elsewhere, defendant

**PRINCE ISAAC**

knowingly used intimidation and threats, and corruptly persuaded, and attempted to do so, with

34

intent to influence, delay and prevent the testimony of "D.W." at an official proceeding, that is, the pending trial of defendants PRINCE ISAAC and SHAMEK HYNSON in United States v. Prince Isaac, et al. Criminal No. 05-576, in the United States District Court for the Eastern District of Pennsylvania.

   In violation of Title 18, United States Code, Section 1512(b)(1), (b)(2).

## COUNTS TWENTY-EIGHT THROUGH THIRTY-TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

        1.        Defendant SHAMEK HYNSON sought to illegally influence the testimony of a potential witness, that is, Person #10, a person known to the grand jury, through a series of acts that were designed to intimidate, threaten, and corruptly persuade Person #10 not to cooperate with law enforcement and not to testify as a government witness at his trial in the United States District Court for the Eastern District of Pennsylvania.

        2.        On or about April 17, 2006, defendant SHAMEK HYNSON sent a letter to Person #10.  In the letter, in reference to information provided by Person #10  to the government, defendant SHAMEK HYNSON stated,  "First of all I never thought you would shit on me to that extent.  I mean come on....I guess you figure I'll be a better father from in here, huh?  I dont blame you for me being in here but damn, if you going to help them keep me in here thats crazy.  Maybe you not realizing how much time I'm facing.  Listen, the only thing they really got is hearsay.  A whole bunch of he said this and she said that.  But you have to go and tell them the truth because we both know you didn't give or buy (anything) for me.  You only said that because you was mad at me behind me cheating.  That lie you told them people is crazy.  They going to take that and try to fry a (man).  Now if you still that upset over the cheating situation that you'll participate in handing me a life sentence then I guess our whole relationship was an accident waiting to happen.  They can't do (anything) to you behind your stuff getting stolen.  With you telling them that (stuff) they could....please don't do that to me.  Out of all the different statements yours is the only one that brings tears to my eyes. Every time I think about it. Hopefully you care enough to stop feeding them people them lies about what you gave me and all

that (stuff)."

        3.      On or about May 17, 2006, defendant SHAMEK HYNSON sent a letter to Person #10.  In the letter, in reference to Person #10 having to testify, defendant SHAMEK HYNSON stated, "I suppose to start Trial in July, but I think the date might get pushed back. You already know that they gonna holla at you but don't worry, don't start stressing and all that. Just be easy cause I'm going to send you some legal material so you'll know ya' rights and know what they can and cannot do.

        4.      On or about May 21, 2006, defendant SHAMEK HYNSON sent a letter to Person #10.  In the letter, in reference to the government's case against him, and, specifically, firearms that had been purchased by Person #10, defendant SHAMEK HYNSON stated, "It's crazy that they using the very people that suppose to love me to throw me a life sentence.... I'm hurt by your actions but I understand that you did it while your heart was broken and you aint really realize what you was putting me in.  Now we just have to fix that.  I got a good case but the parts that they are focusing on tryin to sink me with is you and homegirl.  Mainly you though because its putting something in my hands that never was, you feel me?  Anyway you already know they more than likely going to come with perjury like lil' Kim.  But to try to scare you a little more they might even give you a ratchet charge cause saying you got those for somebody else would be saying you lied when you filled out those forms and thats a charge as well.  But don't let that scare you because you-N-I both know that they was stolen so that charge would disappear....Nobody is saying they saw you give those to nobody but you and you and you know that's a lie so don't let the (stuff) shake you.  Your best interest at heart should be our family first-n-foremost, no matter what."

37

5.      On or about May 25, 2006, defendant SHAMEK HYNSON sent a letter to Person #10.  In the letter, in reference to Person #10 having to testify for the government, defendant SHAMEK HYNSON stated, "I been tryin to get law library to get a better understanding of the law like the 4th and 5th Amendments so we can know your rights.  Because if they threatened you or scared you thats against the law.  Me and you both know you aint break no law or give me nothing so try not to stress ah-ight.

6.      On or about June 7, 2006, defendant SHAMEK HYNSON sent a letter to Person #10.  In the letter, in reference to Person #10 having to testify for the government, defendant SHAMEK HYNSON stated, "Listen I finally found the laws that was violated.  They violated your fourteenth Amendment rights and I got over 20 cases I looked up for you.  The fourteenth Amendment basically says that any coerced confession is unlawful.  Coerced being defined as any physical or mental threats, any deception, fake concern or anything that validates as involuntary.  I sent the cases off to get copies so I'll be sending those off to you.  Don't worry boo Daddy got you.  My lawyer said it might be a good idea for you to actually come to court so that you can get on the stand and tell the truth so the jury can see that you was coerced into telling a lie.  That way you'll be protected by the courts from the Prosecutor tryin to charge you for some (stuff) and the jury also gets to see how they violate innocent people rights to try to get me.  Anyway this aint going to be no walk in the park because they play dirty but when the smoke clears I'll be home taking care of my family like I so badly wish I was doing right now." Defendant SHAMEK HYNSON further stated, "The only thing that scares me is that you're going to kill me because you don't fully understand that one lie in favor of the government gives them ammunition to blow my head off.  So remain strong boo and don't stress, I'm not and I

would'nt steer you wrong.  Listen, I'm going to be real with you.  I only hear from you once a month if that.  And due to the current situation I don't really trust you....It scares me to think that you going to assist them and jeopardize my life.  If you don't love me no more, fine, but don't tell me one thing than do another.  Because for you to even do that in the first place kind of told me you don't give a fuck about me and probably never have.  But like I said don't do no extra (stuff) to me by tricking me into thinking you going to do what needs to be done and keep it real when you planning on back stabbing me the whole time.  Do my sister know you planning on taking my life and still talks to you?  If what you say is true then its all understandable because you fixed the situation and would be giving me a better chance to the jury.  But if you going to carry out your lies then don't mislead me by telling me other wise."

7.     On or about the dates set forth in the chart below, in Philadelphia and Lancaster, in the Eastern District of Pennsylvania and elsewhere, defendant

### SHAMEK HYNSON

knowingly used intimidation and threats, and corruptly persuaded, and attempted to do so, with intent to influence, delay and prevent the testimony of Person #10, at an official proceeding, that is, the pending trial of defendants PRINCE ISAAC and SHAMEK HYNSON in United States v. Prince Isaac, et al. Criminal No. 05-576, in the United States District Court for the Eastern District of Pennsylvania.

| Count | On or About the Following Dates | Defendant | Communicated |
|-------|--------------------------------|-----------|--------------|
| 28 | April 17, 2006 | **SHAMEK HYNSON** | By letter |
| 29 | May 17, 2006 | **SHAMEK HYNSON** | By letter |
| 30 | May 21, 2006 | **SHAMEK HYNSON** | By letter |

| 31 | May 25, 2006 | **SHAMEK HYNSON** | By letter |
| 32 | June 7, 2006 | **SHAMEK HYNSON** | By letter |

In violation of Title 18, United States Code, Section 1512(b)(1), (b)(2).

---

## COUNT THIRTY-THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about October 2004, in Lancaster County, in the Eastern District of Pennsylvania, through on or about December 8, 2004, in Oneida County, in the Northern District of New York, defendant

**SHAMEK HYNSON,**
**a/k/a "Shy,"**
**a/k/a "Legend,"**

having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed, in and affecting interstate and foreign commerce, a firearm, that is: (1) one (1) Intratec USA Inc., Model Tec-22, caliber .22 long rifle, semiautomatic pistol, serial number 080297; and (2) one (1) Smith & Wesson, Model SW40VE (sigma), .40 caliber semiautomatic pistol, serial number PBP4133, which were transported from the Eastern District of Pennsylvania to the State of New York.

In violation of Title 18, United States Code, Section 922(g)(1).

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 21, United States Code, Sections 846, 841(a)(1), 848, 856, 860, 860(c), and 861, set forth in this second superseding indictment, defendants:

**PRINCE ISAAC,**
**a/k/a "Boo,"**
**a/k/a "Connect,"**
**a/k/a "Connetti,"**
**SHAMEK HYNSON,**
**a/k/a  "Shy,"**
**a/k/a  "Legend,"**
**STEVEN GONZALEZ,**
**a/k/a "Boobie," and**
**DWIGHT WILLIAMS,"**
**a/k/a "Pops,"**

shall forfeit to the United States of America:

(a)      any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such Offenses, including, but not limited to:

(1)      one (1) Intratec USA Inc., Model Tec-22, caliber .22 long rifle, semiautomatic pistol, serial number 080297; and

(2)      one (1) Smith & Wesson, Model SW40VE (sigma), .40 caliber semiautomatic pistol, serial number PBP4133; and

(b)      any property constituting, or derived from, proceeds obtained directly or indirectly as the result of such offenses.

2.      If any of the property subject to forfeiture, as a result of any act or

omission of the defendants:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the Court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 21, United States Code, Section 853.

3.      As a result of the violations of Title 18, United States Code, Sections 924(c) and 922(g)(1), set forth in this superseding indictment, defendants

**PRINCE ISAAC,**
**a/k/a "Boo,"**
**a/k/a "Connect,"**
**a/k/a "Connetti,"**
**SHAMEK HYNSON,**
**a/k/a  "Shy,"**
**a/k/a  "Legend,"**
**STEVEN GONZALEZ,**
**a/k/a "Boobie," and**
**DWIGHT WILLIAMS,"**
**a/k/a "Pops,"**

shall forfeit to the United States of America the firearms involved in the commission of these offenses, including, but not limited to:

(1)      one (1) Intratec USA Inc., Model Tec-22, caliber .22 long rifle,

semiautomatic pistol, serial number 080297; and

(2)     one (1) Smith & Wesson, Model SW40VE (sigma), .40 caliber

semiautomatic pistol, serial number PBP4133,

All pursuant to Title 18, United States Code Section 924(d) and 28 U.S.C.

§ 2461(c).

**A TRUE BILL**:

_____

**FOREPERSON**


_____

**PATRICK L. MEEHAN**
**United States Attorney**

44