IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 05-576-2 |
| | : | |
| SHAMEK HYNSON | : | |

## MEMORANDUM AND ORDER

**Juan R. Sánchez, J.,**                                                    **June 11, 2009**

On September 21, 2007, after a ten-day trial, a jury convicted Shamek Hynson of conspiracy

to distribute 50 grams or more of cocaine base (crack) and heroin;[1] using and carrying, and aiding

and abetting the using and carrying of, a firearm, during and in relation to a drug trafficking offense,

in the shooting of Tracy Ramirez;[2] using and carrying, and aiding and abetting the using and carrying

of, a firearm, during and in relation to a drug trafficking offense, in the shooting of Edward

Cameron;[3] three counts of witness tampering;[4] and felon in possession of a firearm.[5]

Hynson moves for judgment of acquittal on the conspiracy count, arguing the evidence was

insufficient to support the verdict and this Court's admission of certain evidence unfairly prejudiced

him.[6]  Hynson also moves for judgment of acquittal on the firearms counts, arguing there was

---

[1]*See* 21 U.S.C. § 846.

[2]*See* 18 U.S.C. § 924(c); 18 U.S.C. § 2.

[3]*See id.*

[4]*See* 18 U.S.C. § 1512(b)(1), (b)(2).

[5]*See* 18 U.S.C. § 922(g)(1).

[6]This Court liberally construes Hynson's pro se filing.  *See Patterson v. GlaxoSmithKline Pharm. Co.*, 298 Fed. Appx. 118, 119 (3d Cir. Nov. 5, 2008) (stating pro se motions must be liberally construed) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

insufficient evidence to support the verdicts.  Hynson asserts his conviction arising from the Ramirez shooting must be vacated because the Government improperly charged multiple firearms counts predicated on a single underlying offense.  Hynson asserts his conviction on the conspiracy and tampering counts should be overturned because this Court erred in refusing to sever the tampering counts from the remainder of the charges.  Hynson also moves for a new trial, arguing the evidence recovered from the search of his residence should have been suppressed.  This Court will grant Hynson's motion in part and vacate Hynson's conviction on the firearms count arising from the Ramirez shooting.  This Court will deny the remainder of Hynson's motion.

**FACTS**

Over the course of several months from 2004 to 2005, Shamek Hynson conspired with co-defendant Prince Isaac and others to distribute more than 50 grams of cocaine, and heroin, in Lancaster, Pennsylvania.  Isaac was the ringleader of the drug distribution enterprise.  Hynson's duties in the organization included selling drugs, distributing drugs to others for sale, using violence and encouraging others to use violence to elicit payment of drug debts, and accompanying Isaac in various drug-related tasks.  The conspiracy also involved sellers Michael Fowler, co-defendant Steven Gonzalez, James Cuffie, Tracy Ramirez, Lindsay Colon (Isaac's then-girlfriend), and Shanika Wilson (Hynson's then-girlfriend).  Co-defendant Dwight Williams allowed Isaac and other conspirators to use his home to package drugs and conduct drug sales.

During his tenure with the drug distribution enterprise, Hynson was involved in two shootings. Both occurred on October 18, 2004.  First, Hynson shot Edward Cameron after Cameron refused to pay a drug debt owed Hynson by Cameron's girlfriend.  Second, Fowler shot Ramirez, a crack user and occasional seller for Isaac, with a gun provided by Hynson.

2

After his arrest, Hynson wrote a series of letters to a girlfriend, Talonda Williams.  Williams pled guilty to straw purchasing firearms for Hynson and Isaac.  In the letters, Hynson urged Williams to tell authorities she had not purchased handguns on his behalf.

**DISCUSSION**

To decide a motion for judgment of acquittal, this Court "must review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence."  *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (citations and internal quotation marks omitted).  Upon a defendant's motion for a new trial, a trial court "may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  The decision to grant or deny a motion for new trial is committed to a trial judge's sound discretion. *United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006).

Hynson moves for judgment of acquittal on the conspiracy count, arguing the evidence presented at trial was insufficient to support his conspiracy conviction.  In evaluating the sufficiency of the evidence, this Court "must view the evidence in the light most favorable to the government and must sustain the jury's verdict if a reasonable jury believing the government's evidence could find beyond a reasonable doubt that the government proved all the elements of the offense." *United States v. Pressler*, 256 F.3d 144, 149 (3d Cir.), *cert. denied,* 534 U.S. 1013 (2001) (citations and internal quotation marks omitted).  Conspiracy consists of the following elements: "(1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together toward that goal." *Pressler*, 256 F.3d at 149 (citations and internal quotation marks omitted); *see also United States v. Toler*, 144 F.3d 1423, 1426 (3d Cir. 1998) (noting "the object of

3

the agreement must be illegal").  "The government must show an 'interdependence' among the alleged conspirators in order to prove that the indicted conspiracy was a single unified conspiracy as opposed to a series of smaller, uncoordinated conspiracies." *Toler*, 144 F.3d at 1426; *see also United States v. Coy*, 19 F.3d 629, 633 (11th Cir. 1994) ("In determining whether the jury could have found a single conspiracy, we consider the following factors: (1) whether a common goal existed; (2) the nature of the scheme underlying the crimes charged; and (3) the overlap of participants.") (citations and internal quotation marks omitted).

The Government must prove "each defendant's knowledge of the conspiracy's purpose and some action indicating his participation."  *United States v. Watkins*, 662 F.2d 1090, 1097 (3d Cir. 1981); *see also United States v. Jones*, 393 F.3d 107, 111 (3d Cir. 2004) ("Mere presence at the scene of a criminal act or association with conspirators does not constitute intentional participation in a conspiracy, even if the defendant has knowledge of the conspiracy.  Evidence tending to show knowing participation in the conspiracy is also needed . . . .") (alterations, citations, and internal quotation marks omitted).  However, the Government "need not prove that each defendant knew all the details, goals, or other participants."  *United States v. Price*, 13 F.3d 711, 728 (3d Cir. 1994) (citations and internal quotation marks omitted).  Conspiracy may be proven entirely by circumstantial evidence.  *United States v. Thomas*, 114 F.3d 403, 405 (3d Cir. 1997); *see also Toler*, 144 F.3d at 1426 ("[T]he government need not demonstrate the existence of a formal agreement, but may instead demonstrate by circumstantial evidence a meeting of the minds to commit an unlawful act.") (citations and internal quotation marks omitted).

Hynson specifically argues there was insufficient evidence to establish he knew of or participated in the drug distribution conspiracy.  Hynson concedes the evidence tended to show he

participated in conspiracies to straw purchase firearms and distribute drugs in Utica, New York, however, Hynson asserts there was insufficient evidence to show he was guilty of participating in the conspiracy charged in the indictment.   Hynson argues the Government failed to show the "interdependence" among himself and co-conspirators necessary to prove his participation in a single conspiracy. *See Toler*, 144 F.3d at 1426.  On the contrary, there was ample evidence to demonstrate Hynson was a knowing, active participant in the conspiracy charged in the indictment. Several witnesses, both participants in and victims of the conspiracy, gave testimony regarding events placing Hynson at the heart of the conspiracy

Lindsay Colon, Isaac's girlfriend during the tenure of the conspiracy, gave testimony which described Hynson's role in the conspiracy as a seller and distributor of crack cocaine.  Colon stated she prepared and packaged crack for Isaac on numerous occasions, and, on at least one occasion, handed the packaged product to Hynson to sell in Lancaster.  Colon also testified about an occasion where Isaac exhorted co-conspirators to work harder.  Isaac gave an angry speech to several individuals, including Hynson, in which he accused them of insufficient effort, exclaiming, "This phone right here does ten thousand a week and you guys can't do that?"  N.T. 9/11/07 2.114:11-12. Colon stated Isaac was referencing the phone he held, which he used to conduct drug transactions. Colon testified she knew of at least two customers to whom Hynson sold crack in Lancaster.  Colon also testified she heard Hynson tell Shanika Wilson to take Porsche Hunter's necklace because Hunter had failed to repay Hynson for crack he had given her to sell.  Colon also testified that, after Isaac was incarcerated, Isaac instructed her to retrieve crack and a gun from Hynson on Isaac's behalf.

Edward Cameron testified as to Hynson's role as a distributor and enforcer.  Cameron testified Hynson shot him in an attempt to collect a drug debt.  Cameron stated his girlfriend, Hunter, received

5

crack from Hynson to sell.  Cameron testified he was approached by a vehicle driven by Isaac in which Hynson was a passenger.  Cameron testified Hynson asked about Hunter's whereabouts, the vehicle pulled away, then returned, and Hynson got out.  Hynson demanded Cameron pay him the money Hunter owed Hynson.  After Cameron refused, Hynson shot at Cameron three times.  Cameron was struck in the arm and abdomen.  Wilson testified she was also a passenger in the vehicle on this occasion, and corroborated Cameron's testimony regarding the details of the shooting.[7]

Wilson also testified she sold heroin and crack for Isaac and Hynson when they were out of town.[8]  Wilson testified she gave the money from her drug sales to Hynson.  Colon testified Wilson also assisted her in sales of crack for Isaac. Both Wilson and Colon testified Hynson had no legitimate employment during the period of time in which the conspiracy was ongoing.

Wilson testified that, after Cameron's shooting, Hynson called her from Utica, and asked her to retrieve a bag with guns and drugs from a storage locker in Lancaster.  Wilson testified she did so, and joined Hynson in Utica.  The drugs and guns were later recovered from the apartment in Utica in which Hynson and Wilson were residing.

James Cuffie testified Hynson and Isaac picked him up from his residence in New York and brought him to Lancaster to sell drugs.  Hynson and Isaac dropped Cuffie at co-conspirator Gonzalez's residence upon their arrival, and Cuffie began selling drugs for Isaac shortly thereafter.

Deborah and Michael Sherr testified they lent their Kia Sephia to Isaac and Hynson in

---

[7]Wilson testified she, Isaac, Hynson, Fowler, and Colon traveled to Coatesville to look for a gun Hynson had discarded earlier.  Colon confirmed that she, Wilson, Isaac, Fowler, and Hynson drove to Coatesville to look for the gun Hynson discarded.  Colon also testified Wilson told her Hynson shot Cameron shortly after the shooting.

[8]Talonda Williams, a woman with whom Hynson had a romantic relationship, testified that, in 2004, Isaac and Hynson traveled to North and South Carolina, where she straw purchased guns for them.

exchange for crack on several occasions.  Michael Sherr testified Hynson nearly always accompanied Isaac during these transactions.

The evidence conclusively establishes Hynson's active participation in the drug distribution conspiracy charged in the indictment, and orchestrated by Isaac.  Colon testified she packaged crack given to her by Isaac and gave it to Hynson for distribution.  She testified Isaac exhorted Hynson and others to work harder to sell drugs.  Wilson testified she sold drugs for Hynson, and assisted Colon in her drug sales, while Hynson and Isaac were in North and South Carolina illegally purchasing firearms.  Cuffie testified Hynson and Isaac retrieved him from New York to sell drugs for their operation.  The Sherrs testified Hynson often accompanied Isaac when they traded use of their car for crack cocaine.  The evidence was sufficient to support the verdict of guilt because a reasonable jury could find beyond a reasonable doubt the Government proved all elements of conspiracy.

Hynson also argues his conspiracy conviction should be vacated because this Court improperly admitted the following evidence: Hynson's New York felony drug conviction, taped recordings of telephone conversations between Hynson and Talonda Williams, and guns and drugs recovered from Hynson's Utica residence.  Hynson argues this evidence was irrelevant and prejudicial, and should have been excluded under Federal Rule of Evidence 404(b), which prohibits use of a defendant's prior bad acts to show propensity to commit the crime charged in the indictment.  *See* Fed. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").

As an initial matter, Hynson's felony drug conviction was excluded by this Court's Memorandum and Order of September 11, 2007, and was never admitted at trial.  The only references to felony charges brought against Hynson were testimony elicited by Hynson's counsel and statements

7

made by Hynson's counsel during closing, and no evidence showing Hynson was convicted of such charges was admitted.

Hynson did not oppose the Government's motion in limine to admit taped conversations between himself and Williams.[9]  *See* Memorandum & Order of September 11, 2007, at 1 n. 4.  "In the absence of plain error, matters not called to the attention of the trial judge cannot be subsequently raised in the post trial stages of the proceeding."  *United States v. Jones*, 404 F. Supp. 529, 539 (E.D. Pa. 1975); *see also* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").  To show plain error, a defendant must show "there is an actual error, i.e., a deviation from or violation of a legal rule; the error is plain, i.e., clear and obvious under current law; and the error affects substantial rights."  *Continental Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 256 (3d Cir. 1998).  "In other words, the error must be prejudicial and must have affected the outcome of the district court proceedings."  *Id.*

Hynson argues recordings of telephone conversations should have been excluded under Federal Rules of Evidence 402 and 403, because they had no relevance to the conspiracy or firearms counts and prejudiced Hynson by suggesting he had a propensity to deal drugs and showing he was incarcerated.  *See* Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible."); Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . .").  There was no error in admitting the taped conversations between Hynson and Williams.  The evidence was relevant because it was probative

---

[9]In a bench conference, Hynson's counsel voiced a few objections to specific portions of the taped conversations; however, he never objected to the admission of the recordings as a whole.

of Hynson's knowing possession of drugs transported from Lancaster to Utica, and the probative value of the conversations outweighed any prejudicial effect. Admission of the conversations was not prohibited by Rule 404(b) because such evidence was relevant to show motive, intent, knowledge, and lack of mistake. *See* Fed. R. Evid. 404(b) ("Evidence . . . may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .").

Hynson also argues the guns and drug evidence recovered from Hynson's Utica residence should have been excluded because it was prejudicial and because its admission was prohibited under Rule 404(b). There was no error in admitting this evidence. Evidence of Hynson's possession of drugs and guns was relevant because it was directly probative of Hynson's participation in the drug distribution conspiracy alleged in this case. The testimony of Colon, Wilson, Cameron, and Williams established Hynson's use of firearms in furtherance of the aims of the conspiracy. The drug and gun evidence also corroborates Wilson's testimony that she transported such items to Hynson in Utica. Thus, the gun and drug evidence was highly probative of Hynson's participation in the conspiracy, and its probative value outweighed any prejudicial effect. Rule 404(b) prohibits admission of evidence of "other crimes, wrongs, or acts," but does not preclude admission of the gun and drug evidence because it is direct evidence of the conspiracy charged in the indictment. Fed. R. Evid. 404(b). *See United States v. Gibbs*, 190 F.3d 188, 217 (3d Cir. 1999) ("Rule 404(b), which proscribes the admission of evidence of other crimes when offered to prove bad character, does not apply to evidence of uncharged offenses committed by a defendant when those acts are intrinsic to the proof of the charged offense.").

The evidence was sufficient to support a verdict of guilt and the evidence Hynson challenges

9

was properly admitted.  Hynson's motion for judgment of acquittal on the conspiracy count is therefore denied.

Hynson argues his conviction for use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) and in connection with the shooting of Tracy Ramirez, must be vacated because the Government also charged Hynson with another § 924(c) offense, namely, the shooting of Edward Cameron, predicated on the same underlying offense of conspiracy.  In the instant matter, the Government concedes Hynson's § 924(c) conviction on Count 16, which charged use of a firearm during and in relation to a drug trafficking crime, namely, the Ramirez shooting, should be vacated because Hynson may not be convicted of multiple § 924(c) offenses based upon the same underlying predicate offense.  Though the Third Circuit has not opined on the issue, several federal courts of appeals have held the Government may not charge multiple § 924(c) violations predicated on the same underlying offense.  *See United States v. Wilson*, 160 F.3d 732, 749 (D.C. Cir. 1998) ("[O]nly one § 924(c) violation may be charged in relation to one predicate crime."); *United States v. McManus*, 23 F.3d 878, 884 (4th Cir. 1994) ("[T]he Second, Fifth, Tenth, and Eleventh Circuits have held that use of more than one gun during a single drug trafficking offense will not support multiple counts under § 924(c).") (citing *United States v. Lindsay*, 985 F.2d 666, 674 (2d Cir.), *cert. denied,* 510 U.S. 832 (1993); *United States v. Moore*, 958 F.2d 310, 311 (10th Cir. 1992); *United States v. Hamilton*, 953 F.2d 1344, 1346 (11th Cir.), *cert. denied,* 506 U.S. 884 (1992); *United States v. Privette*, 947 F.2d 1259, 1262-63 (5th Cir.1991), *cert. denied,* 503 U.S. 912 (1992)).  Hynson's motion for judgment of acquittal as to Count 16 is therefore granted.  *See United States v. Hardwick*, 544 F.3d 565, 574 -75 (3d Cir. 2008) (remanding for resentencing consistent with "a Justice Department policy memorandum requiring a separate predicate offense for each § 924(c) charge").

10

Hynson next argues his § 924(c) conviction on Count 17, for use of a firearm during and in relation to a drug trafficking crime, namely, the Cameron shooting, should be vacated because there was insufficient evidence to support the verdict.  Hynson argues there was not sufficient proof that the firearm used in the shooting of Cameron was used during or in relation to drug trafficking.  There was ample evidence to support the jury's verdict on this count.  Cameron identified Hynson as the shooter and testified he was shot immediately after refusing to pay Hynson a drug debt owed by Hunter.  Wilson testified she witnessed the shooting and heard Hynson demand payment of the drug debt.  Colon testified Wilson told her, shortly after the shooting, that Hynson shot Cameron.  Colon and Wilson testified about searching for a gun Hynson had discarded in Coatesville.  Police subsequently recovered a handgun in Coatesville which was ballistically matched to the Cameron shooting.  The evidence was sufficient to support the verdict of guilt because a reasonable jury, which believed the Government's evidence, could find beyond a reasonable doubt the Government proved all elements of the § 924(c) charge.

Hynson argues his conspiracy and witness tampering convictions should be overturned because this Court erred by refusing to sever the tampering counts from the remaining charges.[10] Hynson asserts the tampering counts were improperly joined because they did not arise from the same set of acts as the conspiracy and gun charges.  Hynson also argues he was prejudiced by their trial together.

_____

[10]Hynson appears to seek a judgment of acquittal as a result of the error he alleges this Court made in refusing to sever charges.  The proper remedy for such error would be new, separate trials.  *See United States v. Halper*, 590 F.2d 422, 433 (2d Cir. 1978).  This point is moot, however, because this Court did not err in denying severance.

Joinder of charges is generally favored.  *See United States v. Niederberger*, 580 F.2d 63, 66 (3d Cir. 1978) ("The obvious purpose of Rule 8(a)'s liberal joinder provision is to promote judicial and prosecutorial economy by the avoidance of multiple trials."); *United States v. Bullock*, 71 F.3d 171, 174 (5th Cir. 1995) ("Joinder of charges is the rule rather than the exception and Rule 8 is construed liberally in favor of initial joinder.").  An "indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b); *see United States v. Irizarry*, 341 F.3d 278, 287 (3d Cir. 2003) ("[I]n a multi-defendant case such as this, the tests for joinder of counts and defendants is merged in Rule 8(b).") (citation and internal quotation marks omitted).  "'Transaction' is a word of flexible meaning.  It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926).

The charges were properly joined under Rule 8(b).  Each count is part of the same "series of acts or transactions" because the tampering counts arose from Hynson's attempt to avoid prosecution for his participation in the charged conspiracy.  *See United States v. Curry*, 977 F.2d 1042, 1049 (7th Cir. 1992) ("A conspiracy and its cover-up are considered parts of a common plan."); *United States v. Sampson*, No. 07-389, 2008 WL 5061653, at *3 (M.D. Pa. Nov. 20, 2008) ("Witness tampering and felony drug trafficking charges may be properly joined under Rule 8(a)'s 'common scheme or plan' language when it is alleged that the former offense was committed in furtherance of the latter offense."); *United States v. Kemp*, No. 04-370, 2004 WL 2757867, at *2 (E.D. Pa. Dec. 2, 2004) ("[M]ultiple cases have held that joinder is appropriate when defendants are charged with perjury or obstruction of justice in relation to the underlying offenses in an indictment."); *United States v. Tyler*,

No. 01-429, 2003 WL 22016883, at *5 (E.D. Pa. June 19, 2003) (holding constitutional deprivation and conspiracy charges arising from the beating of an inmate were "closely related" to obstruction charges for subsequent cover-up of the beating such that joinder under Rule 8(b) was proper); *Moore's Federal Practice* § 608.02[3] (3d ed. 2004) ("[W]hen a defendant is charged with obstruction of justice or witness tampering, it is proper to join the obstruction or tampering offense with the underlying offense to which the obstructive conduct relates."). Both Hynson and Isaac were charged with tampering counts which reflected a shared scheme to intimidate and encourage witnesses to obstruct the prosecution of the conspiracy with which Isaac and Hynson were charged. As such, the tampering counts were properly joined with the conspiracy and related firearms counts as part of the same "series of acts or transactions." Fed. R. Crim. P. 8(b).

Hynson's renewed claim that he was unfairly prejudiced by trial of the tampering counts along with the remaining charges is without merit. Hynson first argued, in a pretrial motion for severance brought under Federal Rule of Criminal Procedure 14, that he would suffer prejudice from the joinder. *See* Fed. R. Crim. P. 14 ("If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."). This Court denied Hynson's severance motion. *See* Memorandum & Order of September 11, 2007. That decision was reserved to this Court's sound discretion. *See Niederberger*, 580 F.2d at 66 ("[I]t is settled that a district court's disposition of a Rule 14 severance motion will not be disturbed in the absence of a clear showing of an abuse of discretion."). Even if this Court abused its discretion in denying Hynson's motion, to succeed on his motion for judgment of acquittal, Hynson "must demonstrate *clear and substantial prejudice* resulting in a *manifestly unfair trial*."

13

*United States v. Console*, 13 F.3d 641, 655 (3d Cir. 1993) (quoting *United States v. Sandini*, 888 F.2d 300, 307 (3d Cir. 1989)) (emphasis in *Sandini*, internal quotation marks omitted); *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981) ("Mere allegations of prejudice are not enough; and it is not sufficient simply to establish that severance would improve the defendant's chance of acquittal.").

Hynson now argues this Court's refusal to sever the charges deprived him of his ability to testify regarding his intentions in the letters he wrote to Talonda Williams, upon which the tampering charges were based. Joinder of the charges, however, did not eliminate Hynson's right to testify. *See United States v. Leggett*, 162 F.3d 237, 251 (3d Cir. 1998) ("It is well settled that a criminal defendant has a constitutional right to testify in his or her own behalf."). This was a right he maintained throughout trial. Moreover, Hynson's failure to testify was a strategic decision, designed to avoid questions regarding other criminal behavior.[11]

Hynson also argues admission of the letters as to the tampering counts prejudiced him as to the conspiracy count because the contents of the letters suggested he was guilty of conspiracy. Hynson made a similar argument in his pretrial motion, asserting "it would be impossible for the jury

---

[11]At least one federal circuit has required severance of counts when a defendant "makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." *Reicherter*, 647 F.2d at 401 (quoting *Baker v. United States*, 401 F.2d 958, 977 (D.C. Cir. 1968), *cert. denied,* 400 U.S. 965 (1970)) (internal quotation marks omitted). In this case, however, Hynson was able to make his case regarding his intentions in the letters by cross-examination of Williams, the recipient of Hynson's letters, and Detective Winters, the officer who read the letters into the record. *See id.* (rejecting the defendant's argument that the trial court's denial of his severance motion effectively eliminated his right to testify on his own behalf as to certain counts where the defendant had the opportunity to make his case in a manner other than by testifying). Furthermore, even if Hynson were tried separately on the tampering counts, and he then chose to testify, he would remain subject to impeachment with evidence of his other crimes under cross-examination. *See* Fed. R. Evid. 609(a). Thus, a separate trial would not eliminate Hynson's stated reason for declining to testify in the instant case.

to avoid the 'spill over' effect between their evaluation of these witnesses on the separate and distinct criminal allegations."   Mem. in Support of Def.'s Mot. for Severance, at 3 (Aug. 8, 2007). Speculation regarding a possible evidentiary spill-over effect among counts or defendants does not rise to the level of " clear and substantial prejudice" required to grant Hynson's motion for judgment of acquittal.   *Console*, 13 F.3d at 655 (emphasis omitted); *see id.* ("Prejudice should not be found in a joint trial just because all evidence adduced is not germane to all counts against each defendant . . . .") (alteration, citation, and internal quotation marks omitted); *Reicherter*, 647 F.2d at 400 (affirming denial of motion for severance where the defendant "pinpoints no specific instances of prejudice.   He merely speculates that the jury must have interchangeably applied the evidence presented on various counts.")

Furthermore, evidence of witness tampering is admissible to show a defendant's consciousness of guilt.   *See United States v. Gatto*, 995 F.2d 449, 454 (3d Cir. 1993) ("It is well-established that evidence of threats or intimidation is admissible under Rule 404(b) to show a defendant's consciousness of guilt . . . ."); *United States v. Monahan*, 633 F.2d 984, 985 (1st Cir. 1980) (stating "[e]vidence of threats to witnesses can be relevant to show consciousness of guilt," particularly where a defendant's conduct "implies a knowledge and fear of particular and damaging testimony intimately related to the prosecution at hand").   Courts of appeals have applied this principle in affirming denials of motions for severance.   *See, e.g.*, *United States v. Rock*, 282 F.3d 548, 552 (8th Cir. 2002) (affirming denial of the defendant's motion to sever felon-in-possession charge from witness tampering charge; stating "[w]here evidence that a defendant had committed one crime would be probative and thus admissible at the defendant's separate trial for another crime, the defendant does not suffer any additional prejudice if the two crimes are tried together"); *United States*

15

*v. Balzano*, 916 F.2d 1273, 1281 (7th Cir. 1990) ("[E]vidence of a defendant's attempts at intimidation of a witness or of a person cooperating with a government investigation is admissible to demonstrate a defendant's 'consciousness of guilt' of the charges which were the subject of the witness' testimony or cooperation.  In those instances where evidence of one crime is admissible at a separate trial for another, it follows that a defendant will not suffer any additional prejudice if the two offenses are tried together.  Thus, the court did not err in declining to sever the witness intimidation count from the extortion and RICO counts, because the evidence relevant to the witness intimidation count could have been admitted at a trial on any of the remaining counts or a combination of the counts to demonstrate consciousness of guilt."); *United States v. Fagan*, 821 F.2d 1002, 1007 (5th Cir. 1987) (affirming denial of the defendant's motion to sever mail fraud counts from witness tampering counts, in part because "[e]vidence of the witness tampering would have been admissible in a separate mail fraud trial to show [the defendant's] guilty knowledge"); *United States v. Foreman*, 87 Fed. Appx. 107, 110 (10th Cir. Jan. 21, 2004) (affirming denial of the defendant's motion to sever obstruction charges from robbery charges where "evidence relating to both sets of charges would be admissible in separate trials to prove motive and consciousness of guilt").  In this case, admission of Hynson's letters to Williams was not prejudicial to Hynson on the conspiracy count because such evidence was also probative of his consciousness he was guilty of conspiracy.[12] Because Hynson failed to show he would be prejudiced by failure to sever the witness tampering counts from the remaining counts, this Court properly denied his motion for severance and his motion

---

[12]Because this Court concludes any consideration by the jury of Hynson's witness tampering as probative of his guilt on the other counts was proper, there was no need for a limiting instruction charging the jury to segregate and analyze evidence per count.  In any event, Hynson did not request such an instruction at the charging conference.

16

for judgment of acquittal will also be denied on this ground.

Hynson argues he is entitled to a new trial because this Court erred in denying his pretrial motion to suppress gun and drug evidence recovered from the December 8, 2004 search of his Utica residence. Hynson argues the search violated his Fourth Amendment rights because Shanika Wilson's consent to search the apartment was not voluntary.

Law enforcement officers may conduct a search, without a warrant or probable cause, if an individual validly and voluntarily consents to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Co-tenants to an apartment can provide valid consent to search the apartment. *Georgia v. Randolph*, 547 U.S. 103, 106 (2006). Wilson told officers at the scene she lived in and made rental payments for the apartment she shared with Hynson. Thus, she was capable of providing valid consent to search as a co-tenant. *See id.* ("The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained.").

Valid consent must "not be coerced, by explicit or implicit means, by implied threat or covert force." *Schneckloth*, 412 U.S. at 228. "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Id.* at 227. In assessing whether an individual's consent was voluntary, courts examine "the characteristics of the accused and the details of the interrogation." *Id.* at 226. Relevant characteristics of an interrogated individual include his age, education, intelligence, and knowledge of his constitutional rights. *Id.* Relevant characteristics of an interrogation include the length of detention, whether questioning was repeated or prolonged,

17

and whether the individual was deprived of food or sleep or was otherwise subjected to physically taxing circumstances. *Id.*

This Court did not err in denying Hynson's suppression motion. Wilson's consent to search Hynson's residence was voluntary. Wilson, who was 21 years old at the time of the search, permitted law enforcement officers to enter her residence and ask her questions. Deputy Amoia asked for Wilson's consent to search the apartment and provided her with the U.S. Marshals' standard consent to search form. This form contained three short paragraphs which described the consent requested, including information regarding Wilson's constitutional right to refuse consent to search. Wilson consented and signed the Marshals' consent form. There was no evidence any officer coerced her to do so, and there was no evidence Wilson's age, education, intelligence, or physical or mental condition might have prevented her from providing voluntary consent under these circumstances. Therefore, the initial search which took place pursuant to Wilson's consent did not violate Hynson's Fourth Amendment rights.

During execution of this initial search, officers discovered a chunky white substance in the bedroom shared by Hynson and Wilson. This discovery provided the probable cause necessary to procure a search warrant for Hynson's apartment, and a warrant was obtained. As a result of a subsequent search pursuant to the search warrant, drugs, drug distribution paraphernalia, guns, ammunition, receipts, and money were seized. Evidence recovered from a search executed pursuant to a valid search warrant is admissible. *United States v. Barr*, 454 F. Supp. 2d 229, 253 (E.D. Pa. 2006). The second search of Hynson's apartment was executed pursuant to a valid search warrant. Thus, all evidence seized from the search of Hynson's apartment was admissible at trial. This Court therefore properly denied Hynson's pretrial motion to suppress, and Hynson's instant motion for new

trial is denied.

An appropriate order follows.