IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION NO. 05-576-2 |
| v. | : | |
| | : | CIVIL ACTION NOS. 16-3357, 20-2636 |
| SHAMEK HYNSON | : | |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                                                                 **May 19, 2022**

Defendant Shamek Hynson has filed three Motions to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 which, as explained below, will be treated as a single, amended motion.[1]  Because Hynson is entitled to some limited relief from the sentence imposed on him, this motion shall be granted in part, and he shall be re-sentenced on Count 33.

**FACTUAL BACKGROUND**

In September 2005, Hynson was indicted along with Prince Isaac, Steven Gonzalez, and Dwight Williams, with multiple drug and firearms offenses which arose out of his and Isaac's leadership of a violent drug trafficking organization based in Lancaster, Pennsylvania.  Two superseding indictments followed against Hynson and the same other three individuals, on February 22, 2007 and April 5, 2007.  Under the second superseding indictment, which contained 33 counts, Hynson was charged with one count of conspiracy to possess with intent to distribute 50 grams or more of cocaine base (crack cocaine) and heroin, in violation of 21 U.S.C. § 846

---

[1] Hynson also filed, on May 20, 2019, a fourth motion seeking to reduce his sentence under Section 404 of the First Step Act of 2018, (Public Law 115-391) which made retroactive those portions of the Fair Sentencing Act of 2010 regarding statutory penalties for crack cocaine. The Court shall address that motion in a separate Memorandum.

1

(Count 1), two counts of using and carrying a firearm during the commission of a drug trafficking crime,[2] in violation of 18 U.S.C. § 924(c) (Counts 16 and 17), six counts of witness tampering in violation of 18 U.S.C. § 1512(b)(1) (Counts 20, 28 – 32), and one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 33).  Following a ten-day jury trial, Hynson was convicted on Counts 1, 16, 17, 28, 30, 31 and 33.  He was acquitted on Count 29, and on June 12, 2009, with the Government's agreement, the Court granted a judgment of acquittal as to Count 16.  On August 10, 2009, Hynson was sentenced to a term of life imprisonment on Count 1, 240 months each on Counts 28, 30 and 31, 180 months on Count 33, all to run concurrently to each other, and 120 months on Count 17, to run consecutively to the sentences imposed on the other Counts. Thus, Hynson's total sentence was life plus 120 months to be followed by five years of supervised release.  A $6,000 fine and $600 special assessment were also imposed.  Hynson appealed to the Third Circuit Court of Appeals, which affirmed this Court's judgment on November 14, 2011.  He thereafter filed a petition for rehearing *en banc* which the Third Circuit denied on April 16, 2012.

As noted, Hynson has filed three motions to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  In an Order issued on June 16, 2020, this Court found Hynson's second and third § 2255 motions, raising claims under *Johnson v. United States*, 576 U.S. 591 (2015) and *Rehaif v. United States,* 139 S. Ct. 2192 (2019) respectively, were properly treated as amendments to his first.[3]  For this reason, the Court now addresses all three motions as one.

---

2    In the course of committing these offenses, Hynson himself shot and seriously injured an individual because he refused to pay a drug debt owed to Isaac and Hynson's organization by his girlfriend.  Hynson also supplied the gun used to shoot and seriously injure another person who was a known  crack user and occasional seller of drugs for Isaac and Hynson.

3    As of June 16, 2020, Hynson's first and second motions were stayed.  The first motion was stayed pending the outcome of Hynson's motion for new trial and subsequent appeal of the Court's

**LEGAL STANDARDS**

Habeas relief is made available to prisoners in federal custody under 28 U.S.C. § 2255(a), which enables them to "move the court which imposed the sentence to vacate, set aside or correct the sentence" and to "claim the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." While the remedy available under § 2255 is comprehensive, it does not encompass all claimed errors in conviction and sentencing. *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Unless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack is drastically limited, and an error of fact or law will not provide a basis for collateral attack unless it is "objectively ascertainable" and constituted "a fundamental defect which inherently results in a complete miscarriage of justice." *Id.; United States v. Eakman*, 378 F.3d 294, 300-301 (3d Cir. 2004). "[C]ollateral review under § 2255 is not a substitute for direct review and thus a movant may ordinarily only raise claims in a § 2255 motion

---

denial of that motion. Order of 6/25/2015, ECF 447. The second (*Johnson*) motion was informally stayed at the request of the Federal Community Defender Office pending a decision from the Third Circuit in *United States v. Harris*, No. 17-1861, as to whether offenses with a mens rea of recklessness could qualify as ACCA predicates. *Harris* remains pending before the Third Circuit while it awaits a determination from the Pennsylvania Supreme Court on whether the Pennsylvania crime of first degree aggravated assault necessarily involves conduct which would qualify as "the use, attempted use, or threatened use of physical force against the person of another" within the meaning of federal law. 18 U.S.C. § 924(e)(2)(B)(i); Order of 6/16/2020, ECF 476. On October 6, 2015, the Third Circuit affirmed this Court's Judgment denying Hynson's motion for new trial. ECF 452. The stay on the first motion, while never formally lifted, is thus no longer necessary. With respect to the second motion, the Government concedes that ACCA status was inappropriate as to Hynson and hence the stay on that motion is also no longer warranted. Gov't Resp. in Opp. to Def's Third Mot. Under 28 U.S.C. § 2255, ECF 477, 4-5 The Government further submits the second motion may be dismissed as moot, and Hynson's § 2255 motion is otherwise ripe for determination in its entirety. While Hynson has not agreed his second motion is moot, he agrees his motions may now be adjudicated.

3

that he raised on direct review." *Hodge v. United States*, 554 F.3d 372, 378-379 (3d Cir. 2009) (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998)). Any claims not raised on direct review will be deemed procedurally defaulted unless a claimant can show either actual innocence or that there is a valid cause for the default resulting in actual prejudice. *Id.,* 554 F.3d at 379. "Ineffective assistance of counsel that rises to the level of a Sixth Amendment violation constitutes cause for a procedural default." *Id.*

The standards and processes for adjudicating § 2255 motions are set forth in subsection (b), as follows:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

§ 2255(b). As the preceding language suggests, "a district court has discretion whether to order a hearing when a defendant brings a motion to vacate sentence pursuant to 28 U.S.C. § 2255," but there are limitations on the exercise of that discretion. *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005). "A district court is required to hold an evidentiary hearing unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *United States v. Scripps*, 961 F.3d 626, 631-632 (3d Cir. 2020). Determining whether a hearing is necessary involves a two-pronged inquiry. "First, the district court 'must consider as true all appellant's nonfrivolous factual claims.'"*Id.* "Second, it 'must determine whether, on the existing

record, those claims that are nonfrivolous conclusively fail to show'" any entitlement to relief. *United States v. Arrington,* 13 F.4th 331, 334 (3d Cir. 2021) (quoting *United States v. Dawson*, 857 F.2d 923, 927 (3d Cir. 1988)).  If the motion "alleges any facts warranting relief under § 2255 that are not clearly resolved by the record," the district court is "obliged to follow the statutory mandate to hold an evidentiary hearing."  *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005).  In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record."  *Gov't. of the V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989).  Bald assertions and conclusory allegations do not provide sufficient grounds to require an evidentiary hearing.  *United States v. Donahue*, 792 F. App'x 165, 168 (3d Cir. 2019).

**DISCUSSION**

The Government concedes one of Hynson's claims and the remainder are frivolous.  An evidentiary hearing is therefore not necessary in this case.

Turning first to the conceded claim, the Government agrees with Hynson's contentions in both his first and second motions[4] that he should not have been classified as an armed career

---

[4] In his first motion, Hynson referred to two offenses that arose from the same incident and arrest in Bertie County, NC, and argued the Probation Office erred in using "one prior case as two cases for the purposes of Armed Career Criminal enhancement."  In relevant part, § 924(e)(1) provides:

> In the case of a person who violates section 922(g) of this title [18 U.S.C. § 922(g)] and has three previous convictions by any court referred to in section 922(g)(1) of this title … for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g). …

5

criminal (ACCA) under 18 U.S.C. § 924(e)(1) and the armed career criminal sentencing guideline, U.S.S.G. § 4B1.4, because he did not have three separate prior convictions for a violent felony or serious drug offense,[5] and that Hynson's counsel[6] was ineffective in failing to raise Hynson's objection to this classification on appeal. In the absence of the requisite number of qualifying prior convictions to trigger the fifteen-year mandatory minimum sentence under § 924(e)(1), the Government submits Hynson should be resentenced to a term not to exceed ten years, the statutory maximum under § 922(g). Inasmuch as Hynson was charged with a § 922(g)(1) violation in only

---

 As the Supreme Court very recently held in *Wooden v. United States*, 142 S. Ct. 1063 (2022), "convictions arising from a single criminal episode … can count only once under ACCA." *Id.* at 1065.

   In his second motion premised upon *Johnson,* Hynson additionally argued his previous convictions for the crimes of manslaughter and assault with intent to kill in North Carolina, and his conviction for strong arm robbery in South Carolina did not have as elements the use, attempted use or threatened use of physical force against another person and thus did not fall under the remaining "elements clause" of § 924(e)(2)(B)(i). Since those previous convictions fell under ACCA's residual clause, which was declared void for vagueness in *Johnson*, Hynson asserted his sentence violated due process of law and required him to be resentenced on his § 922(g) conviction.

[5]   The terms "serious drug offense" and "violent felony" are defined in § 924(e)(2). A "serious drug offense" means "an offense under the Controlled Substances Act (21 U.S.C. § 801, *et. seq.*), the Controlled Substances Import and Export Act (21 U.S.C. § 951, *et. seq.*), or … 46 U.S.C. § 70501, *et. seq…*. for which a maximum term of imprisonment of ten years or more is prescribed by law," or "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance … for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(i), (ii).

   "[T]he term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that has as an element the use, attempted use, or threatened use of physical force against the person of another; or is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(i), (ii).

[6]  Hynson appeared pro se at sentencing, but was represented at trial and on his direct appeal by the same attorney.

one count of the indictment (Count 33) and the Government agrees he should be resentenced on that count, there is no need to further address this matter. The Court shall vacate Hynson's sentence on Count 33 and direct that he be resentenced on this count.

Hynson's third motion also challenges his conviction on Count 33 under *Rehaif*. Specifically, Hynson contends his conviction on this count should be vacated because the Government did not prove Hynson knew he belonged to the relevant class of persons barred from possessing firearms under 18 U.S.C. § 922(g).[7] This argument has no merit.

In *Rehaif*, the question confronted by the Supreme Court was whether the word "knowingly" as used in 18 U.S.C. § 924(a)(2)[8] meant "that the Government must prove that a defendant knew both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was a felon, an alien unlawfully in this county, or the like)?" The Court answered that it did. ("To convict a defendant, the Government must therefore show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it.") 139 S. Ct. at 2194.

---

[7] Hynson was convicted of violating § 922(g)(1), which provides: "[i]t shall be unlawful for any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year … to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition, or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

[8] This subsection reads:

> "Whoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 [18 U.S.C. § 922] shall be fined as provided in this title, imprisoned not more than 10 years, or both."

However, Hynson did not preserve this argument in accordance with Federal Rule of Criminal Procedure 51(b)[9] and instead raises this claim for the first time in this motion. Consequently, it is subject to plain-error review under Federal Rule of Criminal Procedure 52(b)[10], which means Hynson must show: (1) there was an error, (2) the error was plain, and (3) the error affected "substantial rights," such that there is "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021) (citing *Rosales-Mireles v. United States*, 138 S. Ct. 1904-05 (2018)). If those three requirements are shown, relief may be granted if the court finds a fourth element - "that the error had a serious effect on the 'fairness, integrity, or public reputation of judicial proceedings.'" *Id.* "'Rule 52(b) is permissive, not mandatory,'" and "the defendant has the burden of establishing each of the four requirements for plain error relief," a "difficult" task. *Greer*, 141 S. Ct. at 2097 (quoting *United States v. Olano,* 507 U.S. 725, 735 (1993) and *Puckett,* 556 U.S. at 135).

Further, a *Rehaif* error will not be a basis for plain error relief in a felon-in-possession case "unless the defendant first makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon." *Greer*, 141 S. Ct. at 2100. If the defendant does in fact advance such an argument or representation, it is then incumbent upon the court to determine if he has carried his burden of demonstrating a reasonable

---

[9] Rule 51(b) provides in relevant part: "[a] party may preserve a claim of error by informing the court – when the court ruling or order is made or sought - of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection. If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not prejudice the party. …" However, if a defendant has the opportunity to object but fails to do so, the general rule is the claim of error is waived. *Puckett v. United States*, 556 U.S. 129, 134 (2009) (citing *Yakus v. United States*, 321 U.S. 414, 444 (1944)).

[10] Rule 52(b) reads: "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Thus, Rule 52(b) provides a very limited exception to waiver. *Puckett*, 556 U.S. at 135.

probability that the outcome of the district court proceeding would have been different. *Id.* As the *Greer* Court additionally observed, a defendant in a felon-in-possession case faces "an uphill climb in trying to satisfy the substantial rights prong of the plain-error test" based on an argument that he did not know he was a felon because "[i]f a person is a felon, he ordinarily knows he is a felon. 'Felony status is simply not the kind of thing that one forgets.'" *Id.*, 141 S. Ct. at 2097 (quoting *United States v. Gary*, 963 F.3d 420, 423 (4th Cir. 2020)).

Hynson has made no attempt to argue or show he did not know he had previously been convicted of a crime punishable by more than one year in prison at the time he possessed the multiple firearms at issue in this case. It would be nearly impossible for him to do so. Hynson's criminal history at the time he committed the crimes for which he was convicted in this case included prior convictions for possession with intent to sell, and sale and delivery of cocaine in North Carolina, for which he was sentenced to 20 to 24 months; for strong arm robbery in South Carolina, which resulted in a sentence of seven years' imprisonment; for criminal conspiracy to commit armed robbery also in South Carolina, for which he was sentenced to four years' imprisonment; and escape and attempted criminal possession of a controlled substance in New York, which netted Hynson sentences of time served, and three and a half to seven years in prison, respectively. *See,* Gov't Sent. Mem*.,* ECF 345, 23-24; Pre-Sentence Investigation Report (PSR), ¶¶ 95-97, 99-101, 103-104. Thus, while there may have been a plain *Rehaif* error, there has been no showing the error affected Hynson's substantial rights, that the outcome of the proceedings would have had a different result had there been no such error, or that the error had a serious effect on the "fairness, integrity or public reputation of the judicial proceedings" in this case. Hynson's motion to vacate his sentence on *Rehaif* grounds is therefore denied.

9

Hynson's remaining claims are also presented under the guise of ineffective assistance of counsel to avoid the bar presented by his failure to raise them on direct review.

The standards for determining claims of ineffective assistance of counsel have been well settled since the Supreme Court decided *Strickland v. Washington*, 466 U.S. 668 (1984). Noting that the "right to counsel is the right to the effective assistance of counsel," and that counsel can deprive a defendant of that right "simply by failing to render 'adequate legal assistance,'" the Court in *Strickland* decreed "[t]he benchmark for judging any claim for ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.,* 466 U.S. at 686 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) and *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). "Under *Strickland*, [the defendant] must show that his counsel provided 'deficient performance' that 'prejudiced the defense.'" *Shinn v. Kayer*, 141 S. Ct. 517, 522 (2020).

"To show deficiency, a defendant must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (quoting *Strickland*, 466 U.S. at 688). This "is necessarily linked to the practice and expectations of the legal community: '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland*, 466 U.S. at 688). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus,* 140 S. Ct. at 1881 (quoting *Strickland*, at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 944 (3d Cir. 2019) (quoting *Roe v. Flores-Ortega*. 528 U.S. 470, 481 (2000)). "That requires a 'substantial,' not just 'conceivable,'

likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170. 189 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)). Finally, "[j]udicial scrutiny of counsel's performance must be highly deferential," so that every effort is made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "Ultimately, the relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Workman*, 915 F.3d at 943.

In addition to alleging his counsel's performance was deficient in failing to appeal the probation office's conclusion that his arrest in Bertie County, NC resulted in two separate qualifying convictions, Hynson next challenges his counsel's failure to contest the calculation of his offense levels under the U.S. Sentencing Guidelines by the Probation Office in the Pre-Sentencing Report and the adoption of those calculations by the Court. Specifically, Hynson avers: "[t]he ACC enhancement automatically placed Petitioner in category 6 offense level 37, which was increased from a 35 due to the ACC enhancement, which made the Petitioner eligible to receive a life sentence. For this reason, petitioner's sentence should be corrected." This argument is also meritless.

The Presentence Investigation Report is clear. Under the November 1, 2008 version of the U.S. Sentencing Commission Guidelines Manual, § 2D1.1, Hynson's Base Offense Level for his Count I conviction for conspiracy to possess with intent to distribute 58 grams of cocaine base yielded a base offense level of 30, insofar as the relevant amount was more than 50 but not more than 150 grams. 2d. Rev. PSR, (7/29/09), ¶ 84. Because he was the manager/supervisor of the drug trafficking and straw-purchasing conspiracy which involved more than five participants, Hynson received a three-level upward adjustment under U.S.S.G. §3 B1.1(b), and a two-level

11

enhancement under U.S.S.G. § 3C1.1 for obstruction of justice (which was attributable to his conviction on three counts for witness tampering). PSR ¶¶ 70, 79, 87, 88. This brought his offense level to 35. PSR ¶ 89. Finally, because Hynson's past criminal history included at least two prior felony convictions for a crime of violence and/or controlled substance offense, he was classified as a career criminal under U.S.S.G. § 4B1.1 and given a two-level increase. PSR ¶ 90. This brought Hynson's total offense level to 37.[11] Under U.S.S.G. § 4B1.1(b), Hynson's Criminal History Category automatically became Category VI, and his statutory maximum sentence was life imprisonment. Thus, while Hynson is correct that his counsel did not appeal the calculation of his offense level by the Probation Office, there was no reason for him to do so. The calculation was accurate and his counsel was not ineffective in failing to raise it.

Hynson next argues his counsel was ineffective in failing to appeal the two-level sentencing enhancement for obstruction of justice. According to Hynson, the enhancement was improperly levied because "no further obstruction occurred after petitioner was charged with tampering counts." Def's Mot., 8, ECF 390.

Hynson was convicted on three counts of violating 18 U.S.C. §§ 1512(b)(1) and (b)(2) which reads: "[w]however knowingly uses intimidation, threatens or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to –

    (1) influence, delay, or prevent the testimony of any person in an official proceeding.

    (2) cause or induce any person to –

---

[11] Under subsection (a) of this guideline, "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance violation; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance violation." Hynson has not challenged or disputed his classification as a career criminal.

> (A) withhold testimony or withhold a record, document, or other object, from an official proceeding.
>
> (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity, or availability for use in an official proceeding.
>
> (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or
>
> (D) be absent from an official proceeding to which such person has been summoned by legal process.

shall be fined under this title, or imprisoned not more than 20 years, or both.

Hynson was then sentenced on these counts pursuant to the following sentencing guideline:

**§3 C1.1.  Obstructing or Impeding the Administration of Justice**

If, (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

Under Application Note 7, "[i]f the defendant is convicted of an offense covered by … § 2J1.2 (obstruction of justice) … , this adjustment is not to be applied to the offense level for that offense except if a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself (e.g., if the defendant threatened a witness during the prosecution for the obstruction offense). …"

This is precisely what occurred here.  As the second superseding indictment charges, Hynson sent a series of intimidating and threatening letters to one of the witnesses expected to testify on the Government's behalf at trial to try to persuade and prevent that witness from testifying against him.  These letters were dated April 17, May 17, May 21, May 25, and June 7 of 2006, and were the foundation for Counts 28 through 32.  Prior to that, Hynson had been charged in Counts 18 through 20 of the superseding indictment along with Isaac, with threatening a

different potential witness and his/her family with harm if that witness continued to cooperate with the Government.  Inasmuch as a "significant further obstruction" did occur during the investigation and prosecution of this case, the adjustment was properly applied.

Application Note 8 to § 3C1.1 clarifies the matter still further:

<u>Grouping Under § 3D1.2(c)</u>. – If the defendant is convicted both of an obstruction offense … and an underlying offense (the offense with respect to which the obstructive conduct occurred), the count for the obstruction offense will be grouped with the count for the underlying offense under subsection (c) of § 3D1.2 (Groups of Closely Related Counts).  The offense level for that group of closely related counts will be the offense level for the underlying offense increased by the 2-level adjustment specified by this section, or the offense level for the obstruction offense, whichever is greater.

Thus, the tampering with a witness counts were properly grouped with the conspiracy count in Count 1 (the underlying offense) and the two-level adjustment was properly applied.  Hynson's attorney was not ineffective in not raising this argument on appeal either.[12]

Hynson's final argument concerns his conviction and ten-year consecutive sentence under 18 U.S.C. § 924(c) on Count 17.  Premising his argument on the so-called "except" clause contained in subsection (c)(1)(A),[13] Hynson avers "that unless the 924(c) carries a higher

---

[12] Regardless, once Hynson was classified as a career offender, his total offense level was automatically elevated to a 37.  Hence, the application of the two-level obstruction enhancement is irrelevant.

[13] Specifically, § 924(c)(1)(A) reads as follows:

(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime –

mandatory minimum sentence than the predicate offense, they are not to be ran (sic) consecutive." Def's Mem. of Law and Ex. in Supp. of Mot. to Vac. Sent. Under 28 U.S.C. § 2255, 9, ECF 390. Hynson contends his sentence was improperly imposed "because the predicate offense (drug conspiracy) carried a higher mandatory sentence." *Id.,* at 8.  Hynson is not entitled to relief on these grounds either.

In *United States v. Abbott*, 562 U.S. 8 (2010), the Supreme Court squarely rejected the identical argument advanced by Hynson, holding "[a] defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction." *Id.* at 13.  In so holding, the Court recognized the clearly-unintended sentencing oddities which would arise were it to adopt the interpretation urged on it by the defendants in the case before it and by Hynson here. For example, under the defendants' proposed construction, § 924(c) would often impose no penalty at all for the conduct proscribed by it in a case of an individual who sold enough drugs to receive a ten-year minimum sentence under 21 U.S.C. § 841(b)(1)(A) or could well result in the worst offenders receiving the shortest sentences.  Instead, it was the Court's "view that Congress intended the 'except' clause to serve simply as a clarification of § 924(c), not as a major restraint on the statute's operation." *Id*. at 26.  The clause is thus properly read to mean that "if another provision of the United States Code mandates a punishment for using, carrying, or possessing a firearm in connection with a drug trafficking crime or crime of violence, and that minimum

---

…
(iii)  if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

sentence is longer than the punishment applicable under Section 924(c), then the longer sentence applies." *Id.* at 25.

Hynson was sentenced in accordance with this rationale. He was not charged or convicted under any other provision of the U.S. Code for an offense which carried a punishment for using, carrying, or possessing a firearm in this case. He was found to have discharged the firearm (having shot and seriously injured a drug debtor) which carried a minimum sentence of ten years. Under § 924(c)(1)(D)(ii), this sentence was required to run consecutively to the other terms of imprisonment imposed for the crimes committed in this case. Hynson's counsel did not render ineffective assistance by failing to object on appeal of this sentence.

**CONCLUSION**

Hynson's § 2255 motion (as amended) is therefore denied in its entirety. Furthermore, the Court cannot find that Hynson can make the requisite substantial showing of the denial of a constitutional right or demonstrate that jurists of reason would find this or the correctness of the Court's findings to be debatable or wrong. The Court thus finds no basis upon which to issue a Certificate of Appealability. *See generally*, 28 U.S.C. § 2253; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

An appropriate Order follows.

BY THE COURT:

/s/  Juan R. Sánchez
_____
Juan R. Sánchez,       C.J.